RAMÓN BRIALES ALDRICH, demandante y recurrente, *v.* RAMÓN TORRES y COTTON STATES MUTUAL INSURANCE Co., demandados y recurridos.

Número: 625 Resuelto: 22 de enero de 1964

*José A. Suro, Antonio José Amadeo, Antonio José Amadeo, Jr.,* abogados del recurrente; *Rafael S. Fuentes,* y *Alberto R. Márquez,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Se trata de una demanda de daños y perjuicios por un accidente de automóvil que fue declarada sin lugar por la Sala sentenciadora. Se demandó a Ramón Torres y a Cotton States Mutual Insurance Co., y se alegó que en 23 de septiembre de 1960 a las 12 M. mientras el demandante cruzaba el Paseo de Covadonga fue arrollado por el vehículo Ford de 1960, tablillas P-201-533, propiedad del demandado Ramón Torres y conducido negligentemente por Justino Crespo Laugier; que al momento del accidente éste era empleado de Ramón Torres y actuaba dentro del marco de sus deberes; se describieron las lesiones y las pérdidas, y que al ocurrir el accidente estaba en vigor una póliza expedida por la codemandada Cotton States Mutual Insurance Co. que cubría el accidente.

Hay una contestación a la demanda en que comparece *"la parte demandada"* aceptando la ocurrencia de un accidente para la fecha y sitio expuestos en la demanda "y mientras el

vehículo de *referencia* era guiado por Justino Crespo Llaugier", negándose los demás hechos excepto la existencia de la póliza. El demandante sometió a las partes demandadas un interrogatorio siendo la primera pregunta: "Diga si el día 23 de septiembre de 1960 y como a las 12:00 M. y en el paseo Covadonga de San Juan el vehículo Ford 1960, Tablillas 201-533 golpeó a algún peatón;" y la tercera, "Quién era el dueño del vehículo que golpeó al peatón en las circunstancias que se expresan en el interrogatorio 1." A este interrogatorio contestó Ramón Torres a la primera pregunta: "Para la fecha y sitio del accidente ocurrió un accidente en el cual el demandante Ramón Briales Aldrich sufrió algunas lesiones, en vista de la forma negligente en que en el momento se le atravesó delante al vehículo *del demandado* guiado por Justino Crespo Llaugier, produciéndose el accidente por la única y exclusiva negligencia crasa de dicho Ramón Briales Aldrich." A la pregunta número 3 contestó: "El dueño del vehículo para la fecha y sitio de los hechos era Don José Crespo Llaugier."

Aparece en los autos otra contestación que comienza: "*Niegan* las alegaciones de la demanda excepto que *admiten* que ocurrió un accidente entre el peatón demandante y el vehículo alegado *propiedad de* y conducido por la persona que se menciona en la demanda y en la fecha alegada. *Admiten* los apartados 4 y 5 de la demanda." En el apartado 4 se expuso que Justino Crespo Llaugier era empleado del demandado Ramón Torres y actuaba dentro del marco de sus deberes. Esta contestación aparece firmada: Abogado "de *la parte demandada*." Hay otra contestación al interrogatorio que comienza: "Los *demandados* contestan el interrogatorio del demandante." Ahí se dice en contestación a las preguntas 3, 4 y 5 que el dueño del vehículo era Ramón Torres Rivera, que lo guiaba Justino Crespo, y que la relación era de empleado. Finalmente, existe en los autos una contestación enmendada y consignación en que se expone: "*Se admiten* las alegaciones de la demanda", y se consignan $1,000 límite de la responsabili-

dad de la compañía aseguradora por haber habido fractura. Se firma: Abogado "de *los demandados*."

Al dictar su fallo la Sala sentenciadora concluyó que no hubo evidencia en cuanto a quién era el dueño de dicho automóvil. De eso se queja el demandante en este recurso y alega que él no venía obligado a traer esa prueba por cuanto el hecho había sido admitido en las alegaciones. En vista de que la demanda se declaró sin lugar por concluir la Sala que el accidente se debió a la exclusiva negligencia del demandante, tal vez no sería necesario pasar juicio en cuanto al planteamiento mencionado, pero en vista también de la conclusión a la cual llegaremos en torno a la negligencia, debemos considerar el punto.

 .Realmente los autos de una corte de récord como lo es el Tribunal Superior no debían contener una situación de incertidumbre e imprecisión tal sobre las comparecencias de las partes. En casos en que hay varios demandados nos parece que los abogados podrían ser más cuidadosos y específicos en cuanto a la expresión de las posiciones que adoptan sus respectivos representados y sus admisiones o defensas, particularmente sobre hechos esenciales como lo es el aquí envuelto de la propiedad de un vehículo de uso público que ha causado daños. [1]

La situación que revelan los autos pudo razonablemente hacer creer al demandante que no venía obligado a aportar evidencia sobre la propiedad del vehículo. Aún más, tiende a indicar que pudo haberse admitido inclusive el hecho de la negligencia. Por otra parte, si efectivamente el demandado Torres no era el dueño del vehículo ni el chofer su empleado, no debe responder por el solo hecho de esa situación de incertidumbre e imprecisión.

De acuerdo con la prueba no disputable en el récord,—los demandados no ofrecieron evidencia alguna,—es improcedente

---

[1] Ver Art. 1803 Código Civil, Ley de Automóviles, Núm. 141 de 1960, Sec. 13-101.

el fallo de la Sala sentenciadora que declaró sin lugar la demanda, imputándole al demandante la negligencia que causó el daño. Los hechos indisputables son:

Entre doce y doce y media del mediodía el demandante, empleado público, bajaba las escalerillas detrás del Teatro Tapia adyacentes al edificio de los antiguos Baños Públicos en dirección de norte a sur hacia la Avenida Fernández Juncos. Esas escalerillas conducen directamente al Paseo de Covadonga, que en ese sitio constituye una vía de tránsito en ambas direcciones. Al llegar al borde de la acera después de bajar la escalerilla, la situación para el demandante era así: Por el carril más cercano a él no venían vehículos de Puerta de Tierra hacia San Juan, la derecha de estos vehículos. Por el carril más lejano a él había una línea de vehículos que se movían en dirección de San Juan hacia Puerta de Tierra. El demandante estaba consciente de la presencia de esos vehículos y los veía sin dificultad alguna a prudente distancia. Estando libre el carril inmediato, el demandante dio tres o cuatro pasos cruzando el Paseo de Covadonga y se paró, pendiente de acabar de cruzar cuando los vehículos de San Juan hacia Puerta de Tierra se lo permitieran. En ese momento fue arrollado. Declaró que estando así parado salió ese automovil, lo golpeó y de ahí no supo nada más.

■ Un testigo ocular explicó para el récord lo sucedido. En ese sitio la calle Comercio empalma con el Paseo de Covadonga y éste se bifurca. Por la calle Comercio venían un camión y una guagua y el camión se le adelantó por fuera a ésta para meterse por el Paseo de Covadonga en dirección hacia el oeste, o sea hacia San Juan. La guagua siguió por la calle Comercio. El conductor que arrolló al demandante no esperó que el camión entrara por Covadonga sino que hizo un movimiento súbito hacia su izquierda para soslayarlo o adelantársele y arrolló al demandante. Según declaró este testigo y lo demuestra el récord con toda claridad, el accidente no hubiera ocurrido si este conductor no se desvía de pronto a su

izquierda y se hubiera mantenido en su dirección esperando que el camión entrara en esta otra vía. Ésa fue toda la prueba del caso sobre la ocurrencia, ya que los demandados no presentaron evidencia alguna. En estas circunstancias, parecidas a la de un *nonsuit*, el fallo desestimando la demanda equivalió a sostener que bajo ningún concepto en que se analizaran los hechos el conductor pudo ser negligente.

■ Nos explicamos que se impusiera la negligencia al demandante sólo ante ciertos criterios de derecho que expuso la Sala sentenciadora que, como principios generales, no dejan de ser válidos, pero que no siempre son buenos ante un determinado cuadro de hechos y circunstancias en particular. La Sala citó a *De la Paz* v. *White Star Bus Line*, 63 D.P.R. 686 (1944). Los hechos de este caso, decidido hace 20 años, se distinguen de los del presente. Nada hay en nuestro récord en el sentido de que el aquí demandante se lanzara a cruzarle frente a un vehículo. Tampoco son aplicables a este caso otras normas que expone la Sala sentenciadora en sus conclusiones de derecho y casos que cita, tales como que un conductor tiene vía franca mientras discurre por una carretera o avenida *y le asiste el derecho a asumir* que ninguna persona dejará repentinamente su sitio de seguridad para adentrarse en el peligro; así como que no se puede presumir que el conductor se diera cuenta de la inconsciencia del peligro en que incurría el demandante al intentar cruzar una avenida donde un vehículo de motor tiene vía franca. La vía franca o el derecho de paso no da licencia para arrollar, por ese solo hecho, a uno que la invada.

■ En principio son normas correctas y aceptables, pero no son un clisé para ser aplicadas indistintamente a toda ocurrencia de un accidente bajo toda clase de circunstancias. Cada caso de un accidente de tránsito es su caso. No dos accidentes de tránsito son iguales ni presentan las mismas características ante la secuela de imágenes que alteran constantemente la visión circundante, y en que los protagonis-

tas, peatones y vehículos, cambian la escena con la rapidez de los segundos. A cada caso hay que aplicarle el derecho según responda a sus propias circunstancias y según responda a realidades vivientes que son de conocimiento de la comunidad en general y que por lo tanto son también de conocimiento de los jueces. Sabido es que salvo allí donde hay semáforos o cruce de peatones marcado, o un agente al cuidado, con frecuencia el único medio que tiene un peatón de cruzar la calle en ciertos lugares de la zona metropolitana es tratando de ganar la acera opuesta disputándose el territorio pulgada a pulgada con los conductores. No es una virtud generalmente observada en nuestros hábitos de conducir la cortesía de dejar que termine de cruzar un peatón en apuros. Aun en aquellos sitios en que hay marcado un cruce de peatones en que por ley éstos tienen el derecho preferente de paso,— Ley de Automóviles, Sec 5-1002,—todavía hay que hacerlo a riesgo de la propia vida sin la seguridad que la ley ofrece. (²)

El récord contiene prueba al efecto de que en el lugar del accidente no había semáforo, ni cruce de peatones marcado, ni un agente dirigiendo el tránsito. Por el solo hecho de que el demandante abandonara la acera si la situación no le permitía cruzar toda la calle de una vez, y se detuviera a tres o cuatro pasos pendiente de seguir cuando los automóviles de la otra línea se lo permitieran, no lo hace culpable del accidente cuando el conductor, lejos de detenerse ante otro vehículo que quería entrar, manipuló súbitamente hacia su izquierda hasta alcanzar al demandante. En las circunstancias dichas y a la hora esa de las doce en que el tránsito fluye en mayor volumen de San Juan hacia afuera, probablemente la manera usual de poder cruzar la calle en ese sitio era como lo hacía el demandante. De todos modos,

---

(²)Un caso heroico que observamos a diario en torno a lo dicho es el cruce de peatones por la Avenida Muñoz Rivera frente al edificio de este Tribunal Supremo.

no podríamos sancionar como buena doctrina de derecho el que un viandante pueda ser lesionado sin responsabilidad alguna por el solo hecho de que está parado en la parte rodante de una calle y no en la acera, o porque se halle invadiendo la vía franca de los vehículos. En tal caso la vía no está franca.

*Por los fundamentos expresados se revocará la sentencia que declaró sin lugar la demanda y se devolverá el caso a la Sala de instancia para que se dilucide con prueba si fuere menester el hecho pertinente de la propiedad del vehículo o cualquier hecho relacionado con este aspecto del caso, y para que se declare con lugar la demanda y a la luz de todos los hechos y circunstancias, se fije la indemnización correspondiente a quienes respondan en derecho.*